IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | DATE FILED: _____ |
| RAMZI HADDAD | : | VIOLATION: |
| | | 18 U.S.C. § 371 (conspiracy to commit |
| | : | bribery offenses - 1 count) |

### INFORMATION

### COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1.  Defendant RAMZI HADDAD was an entrepreneur who had business and property interests in Allentown, Pennsylvania and elsewhere. Among these interests were potential contracts with the City of Allentown and the actual and prospective ownership of properties which were regulated and overseen by governing authorities in Allentown.

2.  The City of Allentown constituted an "organization" which received annual benefits in excess of $10,000 in each of the calendar years 2014 and 2015 under federal programs involving grants, contracts, subsidies, loans, guarantees, and other forms of federal assistance.

3.  Public Official #3, known to the United States Attorney, was a public official who represented the City of Allentown through an elective office. Public Official #3's elective office vested him with actual and perceived authority and influence over, among other things, the awarding of certain municipal contracts, the negotiation of leases for municipal

offices, and zoning and licensing issues relating to certain buildings and properties located in Allentown. Through his elective office, Public Official #3 had direct authority over certain other public officials ("the municipal staff"), known to the United States Attorney.

4. As a public official, Public Official #3 owed the citizens of Allentown, a duty of honest services, which included an obligation to refrain seeking improper influence, accepting improper influence, and engaging in bribery, kickbacks, or extortion.

5. Public Official #3 aspired to win election to a statewide elective office. To achieve this goal and others, Public Official #3, while still serving as a public official in Allentown, hired and directed certain political operatives ("the campaign staff"), known to the United States Attorney, and solicited donations to a political action committee ("the Friends PAC").

## The Campaign for Federal Office

6. On April 17, 2015, Public Official #3, while maintaining his elective office in Allentown, formally announced his candidacy for an elective office, this time for a position in the federal government.

7. As a candidate for elective office in the federal government, Public Official #3 was required by federal law to file quarterly campaign finance reports which disclosed, among other things, the total amount of campaign contributions that Public Official #3 had raised in a given three-month reporting period. Public Official #3 announced his run for the federal position in a reporting period which would end on June 30, 2015 ("the June 30 reporting period").

8. Public Official #3 determined that his best chance at winning his party's support as a candidate for the United States Senate – and deterring other potential rivals for his

party's nomination – was to maximize his amount of campaign contributions for the June 30 reporting period, thereby demonstrating that his fundraising prowess had improved since an earlier, failed attempt at winning statewide office.

9. Federal law placed limits on the amount of money individuals could donate to a candidate for the federal position within a given election cycle. Federal law did not prohibit individuals from "bundling" multiple donations in order to present those donations to the candidate at once, provided that each individual donation was at or below the legal limits on contribution amounts.

### The Scheme to Defraud

10. In 2014 and 2015, Public Official #3 and others, known to the United States Attorney, knowingly devised and intended to devise a scheme and artifice to defraud and deprive the City of Allentown and its citizens of Public Official #3's honest services through a bribery and kickback scheme, wherein Public Official #3 sought campaign contributions, including contributions to Public Official #3's federal campaign, in exchange for past, continued, and future official actions that Public Official #3 took, attempted to take, and caused and attempted to cause the City of Allentown to take.

### The Defendant's Participation in the Conspiracy

11. From on or about December 2, 2014 to on or about July 2, 2015, in Allentown, in the Eastern District of Pennsylvania, and elsewhere, defendant

**RAMZI HADDAD,**

together with Public Official #3 and others, known to the United States Attorney, conspired and agreed to commit bribery offenses in violation of federal criminal law, that is:

a) for Public Official #3 to corruptly solicit, demand, accept and agree to accept

anything of value from any person, intending to be influenced and rewarded as an agent of an organization, government, or agency in connection with any business, transaction, and series of transactions involving anything of value of $5,000 or more of the City of Allentown, an organization that received more than $10,000 under a federal program during a one year period, in violation of Title 18, United States Code, Section 666(a)(1)(B);

b) to knowingly devise a scheme and artifice to defraud and deprive the City of Allentown and its citizens of their right to the honest services of Public Official #3 through bribery and involving material misrepresentation, false statement, false pretense, and concealment of fact, and to use interstate wire communications to further the scheme to defraud, in violation of Title 18, United States Code, Sections 1343 and 1346; and

c) to travel in interstate commerce and to use facilities in interstate and foreign commerce, that is telephones and the Internet, with the intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on, of an unlawful activity, that is, Bribery in Official and Political Matters, in violation of Title 18 Pa. Cons. Stat. Ann. § 4701, and to thereafter perform and attempt to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

## MANNER AND MEANS

12. Public Official #3 directed certain municipal staff to identify for him

individuals and entities who had profited from their dealings with the City of Allentown and who sought favorable treatment from the City of Allentown ("the vendors"). Public Official #3, directly and through campaign staff, made clear to certain vendors, including defendant RAMZI HADDAD, that providing Public Official #3 with items of value, including food, drinks, and campaign contributions, was a necessary condition for receiving certain favorable treatment from the City of Allentown.

13. Public Official #3 caused and attempted to cause certain municipal staff to take official action favorable to certain actual and potential donors, including defendant RAMZI HADDAD and other donors to Public Official #3's federal campaign.

14. To conceal the conspiracy, Public Official #3 directed certain municipal staff and campaign staff to interact with actual and potential donors and vendors but to avoid creating any records that would show a linkage between Public Official #3's official actions and campaign contributions from donors, including defendant RAMZI HADDAD.

15. To conceal his role in the conspiracy, Public Official #3 limited his direct interactions with certain vendors, including defendant RAMZI HADDAD. When defendant HADDAD and other vendors raised concerns about Public Official #3's campaign staff, Public Official #3 rebuffed their concerns and insisted that they interact with campaign staff.

16. During his in-person interactions with defendant RAMZI HADDAD at restaurants, Public Official #3 directed defendant HADDAD to pay Public Official #3's food and beverage bills.

17. Public Official #3, defendant RAMZI HADDAD, and others, known to the United States Attorney, used facilities of interstate of commerce, that is, telephones and the Internet, in order to discuss, promote, manage, establish, carry on, and otherwise facilitate the

conspiracy.

18. In order to conceal and continue the conspiracy, Public Official #3 employed countersurveillance maneuvers, including destroying records, conducting sweeps of government offices for electronic surveillance, and procuring disposable "burner phones" that he believed would be difficult for law enforcement to monitor.

## OVERT ACTS

In furtherance of this conspiracy, defendant RAMZI HADDAD and Public Official #3 committed the following overt acts, among others:

1. On or about December 15, 2014, defendant RAMZI HADDAD delivered to Public Official #3's campaign staff a $2,500 check payable to the Friends PAC.

2. On or about December 19, 2014, at the direction of Public Official #3, an Allentown municipal employee, known to the United States Attorney, forwarded an e-mail about defendant RAMZI HADDAD's zoning application to his own personal e-mail account. From his personal e-mail account, the employee then forwarded the e-mail chain to Public Official #3's campaign staff, along with guidance for defendant HADDAD.

3. On or about March 16, 2015, after Public Official #3 complained to defendant RAMZI HADDAD that he had expected defendant HADDAD to have contributed an additional $5,000 to the Friends PAC, HADDAD delivered to Public Official #3's campaign staff two checks in the amount of $2,500, one drawn on an account belonging to HADDAD and the other drawn on an account belonging to a third party, both payable to the Friends PAC and totaling $5,000.

4. On or about March 17, 2015, defendant RAMZI HADDAD met with Public Official #3 for the purpose of discussing defendant HADDAD's business and property

interests in Allentown. At the meeting, Public Official #3 solicited defendant HADDAD for more money. Public Official #3 explained his plan to maximize contributions prior to June 30, 2015, and asked HADDAD to raise money for the federal campaign by bundling his own contribution with the contributions of others.

5. On or about April 15, 2015, defendant RAMZI HADDAD met with Public Official #3 for the purpose of discussing his business and property interests in Allentown. At the meeting, Public Official #3 agreed to help defendant HADDAD with zoning issues and other aspects of a prospective business deal, but advised defendant HADDAD that it was nearly time to begin raising money for the federal campaign. HADDAD agreed to contribute money to the campaign.

6. On diverse dates between April 15, 2015 and May 18, 2015, Public Official #3 used telephones, in interstate commerce, to communicate with defendant RAMZI HADDAD and secure defendant HADDAD's agreement to raise $25,000 for Public Official #3's campaign before the June 30 deadline.

7. On or about May 18, 2015, Public Official #3 traveled from Allentown to New York City in order to meet with defendant RAMZI HADDAD and discuss the official "help" that Public Official #3 could provide in return for the contributions that defendant HADDAD would raise for Public Official #3's federal campaign. At the meeting, HADDAD reiterated that he would raise approximately $25,000 before the June 30 deadline but that he needed Public Official #3 to intervene with municipal inspections of one of HADDAD's buildings in Allentown. Public Official #3 agreed to "get on" a particular municipal inspector and told HADDAD to "let me know" of any future problems.

8. On or about June 29, 2015, Public Official #3 instructed defendant

RAMZI HADDAD to immediately delete from HADDAD's mobile telephone all text messages constituting evidence of defendant HADDAD discussing potential municipal contracts with Public Official #3's campaign staff.

9. On or about June 29, 2015, defendant RAMZI HADDAD delivered to Public Official #3 checks from multiple donors, totaling approximately $15,000, all made payable to Public Official #3's federal campaign. Public Official #3 reminded HADDAD of his pledge to raise a total of $25,000, advised that he bundle additional checks and "back date" them to a date prior to June 30, 2015, and restated his own ability to take official action which could affect defendant HADDAD,

10. On or about June 30, 2015, defendant RAMZI HADDAD delivered to Public Official #3's campaign staff two checks, totaling $6,500, both made payable to Public Official #3's federal campaign. These checks were intended to replace a previous check which defendant HADDAD had delivered to Public Official #3 the day before.

All in violation of Title 18, United States Code, Section 371.

*[signature]*
**ZANE DAVID MEMEGER**
**United States Attorney**